IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-CR-200__16____ |
| | ) | |
| UNIQUA A. WHITAKER, | ) | Title 18, United States Code, |
| | ) | Section 1343. |
| Defendant. | ) | |

# INDICTMENT

## COUNT ONE
(Wire Fraud)

**THE GRAND JURY CHARGES:**

1. Beginning in or about April 2021, and continuing until in or about September 2021, in Champaign County, in the Central District of Illinois, and elsewhere,

**UNIQUA A. WHITAKER,**

defendant herein, knowingly participated in a scheme and artifice to defraud the Small Business Administration; Harvest Small Business Finance, LLC; and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### The Paycheck Protection Program

2. On March 13, 2020, by Proclamation 9994, the President of the United States declared a national emergency concerning the coronavirus disease 2019 ("COVID-19") pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency

financial assistance to Americans suffering economic harm because of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other specified expenses through a program referred to as the Paycheck Protection Program ("PPP"). PPP loan proceeds were required to be used by the recipient to pay certain expenses, such as payroll costs, interest on mortgages, rent, and utilities.

3. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. Such certifications required the applicant to affirm that "The [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," and that the "loan proceeds will be used only for business-related purposes as specified in the loan application" and consistent with the PPP rules. The authorized representative of the applicant was also required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," and "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

4. In the PPP loan application, the applicant was required to state, among other things, the business's: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible

to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses, such as federal tax filings and bank account records.

5.   A small business's PPP loan application would be received and processed by a participating lender approved by the Small Business Administration ("SBA"). If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.

6.   Harvest Small Business Finance, LLC, located in California, was a financial institution that was approved by the Small Business Administration ("SBA") to serve as a participating lender, and thus was authorized to directly originate, fund, and service SBA loans, with backing by the SBA Guaranty.

**Scheme to Defraud**

7.   Beginning in or about April 2021, and continuing until in or about September 2021, the defendant engaged in a scheme to fraudulently obtain a Paycheck Protection Program (PPP) loan. As part of the scheme to defraud, the defendant participated in the submission of false information as part of, and in support of, her PPP loan application.

8.   As part of the scheme to defraud, the defendant participated in the submission of a loan application dated on or about April 24, 2021, in which the application reported that she was a self-employed business owner with a gross annual income of $109,060. As part of the loan application process, it was acknowledged that the loan funds were to be used for payroll costs, rent/mortgage interest, utilities, operation expenditures, and other business costs. Additionally, as part of the application, a 2020 IRS Schedule C

(Form 1040), Profit or Loss From Business, was submitted in support. This form indicated that the defendant's business had an annual gross income of $109,060, total expenses of $89,436, and a net profit of $19,624.

9. The defendant, however, did not operate a business with the financial status and activity as reported. Instead, as part of a scheme to defraud, the defendant participated in the submission of falsified information on the loan application and the supporting documentation in order to secure a PPP loan that the defendant was not entitled to receive.

10. As a result of the scheme and artifice to defraud, Harvest Small Business Finance, LLC, provided the defendant with a PPP loan on or about April 30, 2021, in which the defendant received $20,833 that was deposited into her Wells Fargo bank account.

11. On or about August 30, 2021, an application for loan forgiveness was submitted for the PPP loan. The application indicated that $16,743 of the loan proceeds were used for payroll costs during the period of April 30, 2021, through August 29, 2021. The forgiveness was approved, and the SBA paid $20,904.35 to Harvest Small Business Finance, LLC, on or about September 2, 2021.

12. As a result of the scheme and artifice to defraud, the defendant defrauded the SBA; Harvest Small Business Finance, LLC; and others, and obtained money by means of materially false and fraudulent pretenses, representations, and promises.

**Execution of the Scheme**

13. On or about the date set forth below, in Champaign County, in the Central District of Illinois, and elsewhere,

**UNIQUA A. WHITAKER,**

defendant herein, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, sounds, and images, that is, a wire transfer of loan funds from Harvest Small Business Finance, LLC; located outside of the State of Illinois, to the defendant's bank account, located in the Central District of Illinois, when in truth and fact the defendant knew that she was not entitled to receive it. The interstate wire communication was sent on or about the approximate date below:

| Count | Approx. Date Sent | Amount | Sender |
|---|---|---|---|
| 1 | 4/30/2021 | $20,833 | Harvest SBF |

In violation of Title 18, United States Code, Section 1343.

A TRUE BILL.
s/Foreperson
FOREPERSON

for s/Doug Quivey
GREGORY K. HARRIS
United States Attorney
NTB